(37 Misc. Rep. 322.)

### CLOONAN v. CITY OF KINGSTON.

(Supreme Court, Special Term, Ulster County. February, 1902.)

1. CITY CHARTER—POWER OF MAYOR—VETO.
    Under a city charter providing that the mayor shall have authority "to approve or disapprove all bills, orders, resolutions or ordinances," the mayor has no authority to veto a part or one item of a single resolution of the city council approving and auditing many claims against the city; the word "bills," as used in the charter, referring to something in the nature of a legislative act, and not to claims against the city.
2. CITY ATTORNEY—COMPENSATION.
    Where the common council of a city has power to fix the salary of the city attorney, it may award him compensation for preparing a revision of the city charter, in excess of the amount of his salary.

Action by John F. Cloonan against the city of Kingston. Judgment for plaintiff.

Linson & Van Buren, for plaintiff.

Walter N. Gill, Corp. Counsel, for defendant.

BETTS, J. This is an action brought by the plaintiff, an attorney and counselor at law, to recover for certain professional services rendered the defendant in the years 1895 and 1896 in the preparation and completion of a revision of the charter of the defendant. The plaintiff bases his cause of action upon the rendition of services of the value of $500, and a due and regular audit of his claim or bill for that amount by the common council of the defendant, and a failure of the city authorities to pay him the said amount of $500, so audited. The answer of the defendant is that during the years 1895 and 1896 plaintiff was the law officer or corporation counsel of the defendant,

and that for all services, including those in this action, he was paid a salary, and that the amount audited by the common council was properly vetoed by the mayor, and hence there can be no recovery in this action. The issue is very simple. The plaintiff performed the services. The value thereof is not brought in question. The only proof before me is that they were worth $500. A verified claim for the sum of $500, certified to as to its correctness by the committees on charter revision of the defendant in the years 1895 and 1896, was submitted by the plaintiff to the common council, referred to its auditing committee, approved by them, and returned to the common council with their approval indorsed thereon. The report of the committee on auditing accounts including this bill of the plaintiff, the street pay roll, and a number of other bills against the city was, on motion of Alderman Powers, at a meeting of the common council held April 10, 1896, adopted, and a warrant ordered issued for the same. The resolution thus adopted is as follows: "That the report of the committee be adopted, and that warrants be issued in payment of the same." On the 11th day of April, 1896, the mayor indorsed at the foot of the above resolution as follows: "Approved this 11th day of April, 1896, except bill of corporation counsel, which I disapprove. Henry E. Wieber, Mayor." It is contended by the plaintiff that this audit was legal and valid, and that the mayor had no authority to thus veto a part of a resolution and approve of the balance of it.

The charter of the city of Kingston (section 34 of chapter 150 of the Laws of 1872, as amended by section 3 of chapter 387 of the Laws of 1877) contains the only authority for the mayor to veto or approve or disapprove acts of the common council. It is, so far as is necessary for our purpose, as follows:

"It shall be his duty * * * to approve or disapprove all bills, orders, resolutions or ordinances which shall have passed the common council for the expenditure of money or of a legislative character, and if he approves he shall indorse his approval thereon in writing, and sign such approval; if he disapproves he shall return such transcript to the common council, or the clerk thereof, with his objections in writing, which shall be filed by the clerk, and the common council shall, at its next meeting thereafter, proceed to reconsider such ordinance, resolution, orders or acts thus disapproved, and if the same shall be passed by two-thirds of all the members of the common council then in office, the same shall have full force and effect, notwithstanding the objections of the mayor. If any such transcript shall not be returned by the mayor to the common council or clerk within five days after it shall have been presented to him (Sunday excepted), such ordinance, resolution, order or act shall have full force and effect in like manner as if duly approved by the mayor."

The defendant contends that under this section of the statute the mayor had the power to veto or disapprove this bill of the plaintiff and approve of the others, while the plaintiff claims that he had no such power or authority. A reading of the act shows clearly, I think, that the word "bills" there does not refer to a claim or claims against the city for services rendered or materials furnished, but refers to something in the nature of a legislative act. This clearly enough appears from what follows. In the first instance it is noted the language used is "to approve or disapprove all bills, orders, resolutions.

or ordinances," and in a later reference in the same connection the legislature uses the words "ordinances, resolutions, orders or acts," thus reversing the order previously used, and using the word "acts" in place of "bills"; and still later the words "ordinance, resolution, order or act" are again used in the same connection and with reference to the same matters that the words "bills, orders, resolutions or ordinances" were used. If the legislature intended to give to the mayor power to veto a separate bill against the city, which was contained in a resolution approving of many bills, it certainly has not used language competent to accomplish that purpose. While it may be, as urged by the defendant, that such power would be a salutary one, and one that under the old charter might frequently have been used with benefit to the city of Kingston, yet it must be borne in mind that courts can construe and give effect only to such language as is used. Indeed, if the construction contended for by the learned corporation counsel was correct, and the word "bills" referred solely to claims against the city, the veto or disapproval of the mayor would be a finality, as the common council is nowhere given authority to reconsider the action of the mayor in disapproving "bills"; so that a "bill" against the city disapproved by the mayor would stay disapproved of, so far as the common council is concerned. It cannot, I think, be successfully contended that the legislature ever intended to thus submit honest claims against a municipality to the pique, prejudice, or honest mistake of any mayor. It must be borne in mind that what was before the mayor for action was a single resolution, hereinbefore quoted, adopting the report of the auditing committee, as to many bills, and not a series of resolutions approving several separate bills. His disapproval, in fact, was attached to or written on the foot of the copy of the resolution, and not to the bill of plaintiff. I find no power in the mayor, under the charter as it then existed, to veto or disapprove a part of a resolution and approve the remainder. There was no such office as that of corporation counsel named in the charter. I hold, therefore, that the claim of the plaintiff was audited by the common council, and that it has never been lawfully vetoed by the mayor, and is therefore a valid claim against the city of Kingston.

It is also urged on behalf of the defendant that the plaintiff was, by resolution of the common council, instructed to do this work as corporation counsel; that he was not personally named in such resolution; that his salary had been fixed by that common council at the sum of $1,500 per year; and that this work would be covered by his salary, which has been paid to him in full for both years. The answer is made to this that the common council, which fixed his salary in the first instance, also audited and allowed to him this additional amount; and, if the common council had the power to determine and fix his salary prior to the rendition of any services, it certainly had power, after the rendition of these services, to grant such additional compensation to the said salary, so fixed, as it might deem proper, having in view the labor actually performed. This it did by adopting the resolution approving the action of the auditing committee. Thus, without quoting any further from the evidence submitted, this question is presented: An attorney is employed by the

city, and called its "corporation counsel," though no such office is provided for by the then charter. His salary is fixed. He is directed by the common council, as corporation counsel, to do certain legal work. He conceives that from its magnitude it is work not contemplated by his original employment and compensation, and puts in a bill for separate or additional payment for this work, which bill is approved and audited by the municipal body charged by law with that duty, and having better knowledge of the extent of the work and its value than any court can get, and which body would be presumed to have in mind the regular employment of plaintiff, the amount of his salary, and the services contemplated for said salary; and no legal disapproval or veto of such audit has been had. It follows that judgment should be ordered for the plaintiff against the defendant for $500, with costs.

Judgment for plaintiff, with costs.