STATE, Respondent v. WILLIAMS, Appellant

(173 N.W.2d 889)

(File No. 10676. Opinion filed January 22, 1970)
Rehearing denied April 7, 1970

**David V. Vrooman**, Sioux Falls, for defendant and appellant.

**Gordon Mydland,** Atty. Gen., **Walter W. Andre,** Asst. Atty. Gen., Pierre, for plaintiff and respondent.

ROBERTS, Presiding Judge.

Defendant Porter Williams was found guilty by a jury on two counts of an information charging violation of Section 2, Chapter 94, Laws 1968, which makes it "unlawful for any person to manufacture, possess, have under his control, sell * * * or compound any narcotic drug or any preparation containing a narcotic drug" except as therein authorized. Defendant was charged with unlawful possession of marihuana in count one and with felonious selling in count two. He was sentenced for unlawful possession to a term of five years in the State Penitentiary and ten years for illegal sale.

We first consider the contention that the trial court erred in denying defendant's motion for judgment of acquittal on the ground that the evidence as a matter of law established the defense of entrapment.

On June 5, 1968, William Nye, a special agent for the state, investigating narcotic violations, entered the Mocamba Club in Sioux Falls where he contacted defendant Williams. At that time Nye purchased from Williams seven bags or lids of marihuana described as Aculpulco gold. He testified: "I asked him if he would be interested in dealing in the future and he said that he would and he said that he would be leaving Friday for California. At that time I asked him where I could contact him in California. He pulled from his pocket a small address type book and at that time wrote down two telephone numbers, the names of two cities, his own name and the name Mel. * * * Q Now I will show you what has been marked as Exhibit 5 and ask you if this is the paper you were talking about? A Yes sir. * * * Q Now then did you in fact make any calls to either of these telephone numbers that are on the Exhibit 5? A I did. Q Approximately when, if you can recall? A I believe approximately 12:45 A.M. the morning of the 26th of June which would have been a Wednesday morning. I called the top number * * * and asked for subject Mel. This name also appears on this piece of paper. This Mel was not there. I asked where I could locate him. The subject that answered the phone advised me to call the other number * * *. I called that number and asked for Mel and asked him where I could get ahold of Porter. He said that he wasn't there but to call tomorrow night at about the same time. We agreed on a specific time being 12:00 o'clock our time or 10:00 o'clock California time and he said that Porter would be there. * * * Q Can you relate that conversation? A I asked him if he was ready to deal. He said Yes. In our previous meeting we had agreed on a price. It was first indicated that the price would be $200.00 per kilo if I purchased just one kilo. He then later said that if I would purchase more than one, for example ten kilos, the price would be $1650.00 for the ten or $165.00 per kilo."

On July 3, 1968, defendant informed Nye that he had obtained a quantity of marihuana and they agreed to meet the following evening at the Mocamba Club. Nye, accompanied by another state agent whom he introduced to defendant as his money man, met at the place designated with defendant and one Wendell Shaw. They sat in a booth and the state agents exhibited to defendant and Shaw money in the amount of $1650. Nye and defendant then left the Mocamba Club and went to a garage in the city and picked up a bag containing material which was later examined by an assistant state chemist who determined that the material contained marihuana. After payment of the agreed price to and delivery of the marihuana by defendant to the state agents at a parking lot near the Mocamba Club, defendant was placed under arrest.

■ Entrapment has been defined as the inducement of one to commit a crime not contemplated by him for the mere purpose of instituting criminal proceedings against him. 21 Am. Jur.2d, Criminal Law, § 143. This court has not sustained entrapment as a defense in a criminal action, but has held that the facts in an action presented no question of entrapment. State v. Johnson, 49 S.D. 414, 207 N.W. 216; State v. Plucker, 71 S.D. 78, 21 N.W.2d 280; City of Sioux Falls v. Famestad, 71 S.D. 98, 21 N.W.2d 693.

In the much quoted case of Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, the court held that the question of entrapment should have been submitted to the jury. The court speaking through Mr. Chief Justice Hughes said:

"It is well settled that the fact that officers or employees of the government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises. * * * The appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to reveal the criminal design; to expose the illicit traffic, the prohibited publication, the fraudulent use

of the mails, the illegal conspiracy, or other offenses, and thus to disclose the would-be violators of the law. A different question is presented when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute. * * * the defense of entrapment is not simply that the particular act was committed at the instance of government officials. * * * The predisposition and criminal design of the defendant are relevant. But the issues raised and the evidence adduced must be pertinent to the controlling question whether the defendant is a person otherwise innocent whom the government is seeking to punish for an alleged offense which is the product of the creative activity of its own officials. If that is the fact, common justice requires that the accused be permitted to prove it. The government in such a case is in no position to object to evidence of the activities of its representatives in relation to the accused, and if the defendant seeks acquittal by reason of entrapment he can not complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue. If in consequence he suffers a disadvantage, he has brought it upon himself by reason of the nature of the defense."

The majority opinion in Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848, stated that "a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal". The standards outlined in the Sorrells case, supra, by which such determination is made are specifically reaffirmed.

 Defendant was permitted to plead not guilty and thus deny that he committed the crime charged and to raise the defense of entrapment. Entrapment is a positive defense, the invocation of which necessarily assumes that the act charged was committed. 22 C.J.S. Criminal Law § 45(1). The record here does

not present for determination the question whether the defense of entrapment is available to a defendant who denies that he committed the offense charged. See Annot., 61 A.L.R.2d 677.

 The question of entrapment where the evidence is in conflict as to the origin of the intent to commit the offense charged is for the jury. The question of entrapment in the instant case was, at most, one of fact. Entrapment as a matter of law is not established where there is substantial evidence from which it may be inferred that the criminal intent to commit the offense charged originated in the mind of the accused. 22 C.J.S. Criminal Law § 45(2). The court carefully instructed the jury with reference to entrapment and left to the jury the determination of the question. An exception interposed by defendant that the instruction did not state the law is insufficient upon which to predicate error. SDCL 1967, § 15-6-51(b). However, an exception to instruction was unnecessary to preserve for review here the question of insufficiency of the evidence presented on motion for directed verdict.

██ ██ Defendant complains of the interrogation of witness Nye as to the purchase of marihuana from defendant on June 3, 1968. To meet the issue of entrapment raised by defendant, the predisposition and criminal intent of the defendant became relevant. Sorrells v. United States, supra. It tends to show that enforcement officers acted in good faith and in the belief that the accused was engaged in unlawful traffic of narcotics. United States v. Sherman, 2 Cir., 200 F.2d 880; Carlton v. United States, 9 Cir., 198 F.2d 795; Sauvain v. United States, 8 Cir., 31 F.2d 732; Annot., 33 A.L.R.2d 883, § 6. The evidence of the prior purchase was admissible to negative the defense of entrapment. The evidence justifies the finding of the jury that the defendant was not entrapped. There is no doubt that the evidence is sufficient to sustain the verdict of guilty on both counts.

Defendant contends that the trial court should have granted motion for continuance of his case to the next term of court for trial before a jury selected from a panel not then in attendance upon the ground that defendant while handcuffed was brought

on the first day of the trial into the courthouse past a number of prospective jurors. When the court convened, attorney for the defendant made the following statement:

"May it please the Court, this being the time set and fixed for the trial of the defendant, Porter Williams, I would like to advise the Court that I was contacted this morning by the Sheriff's office inquiring what time to bring Mr. Williams to Court and I advised the Sheriff's office that he is to be here no later than 9:30; that I would request that he be in civilian clothing and he come un-handcuffed * * * They brought him to the Court-house about 9:30 in civilian clothing but handcuffed and walked him past I will say at least fifty percent of the jurors who are already here. Mr. Williams is not a con-vict, he is not incarcerated. He simply was unable to post a $5,000.00 bond for his appearance and I feel that this is highly prejudicial to the defendant and would deny him a fair trial before these jurors."

The court denied the motion and ordered that defendant not be handcuffed while in court.

■ It is recognized that a sheriff or other police officer has the right to handcuff a prisoner in his custody to secure his safe conduct and guard against an escape while bringing him to or from a courtroom. State v. Hanrahan, 49 S.D. 434, 207 N.W. 224; 23 C.J.S. Criminal Law § 977; 21 Am.Jur.2d, Criminal Law, § 240. No testimony was offered or received that defend-ant while handcuffed was observed by prospective jurors. See State v. Long, 195 Or. 81, 244 P.2d 1033; McCoy v. State, Fla., 175 So.2d 588. There was no abuse of discretion in denial of motion for continuance.

Defendant contends that the 1968 Uniform Drug Act is in-valid as applied to the facts of this case. The plant, cannabis sativa L., commonly known as mirahuana, is included with opium, opium derivatives and opiates in the definition of narco-tic drugs. § 1, Chap. 94, Laws 1968; Comments, 14 South Da-kota Law Review 303. Defendant argues that marihuana is not

a narcotic drug as is opium; that the statute insofar as it places marihuana in the same class with opium and its derivatives which admittedly cause addiction and physical debility and equates opium and marihuana crimes offends against the constitutional mandate that classification shall be reasonable; and that since the 1968 statute under which defendant was sentenced is invalid in this respect the information did not charge criminal offenses.

It will be presumed that the legislature inquired whether there was a reasonable or sound basis for the classification and acted advisedly. State v. Nuss, 79 S.D. 522, 114 N.W.2d 633. The record does not show that the question of constitutionality was raised below or that the information for that reason did not state criminal offenses. It is the rule that the constitutionality of a statute cannot be raised for the first time on appeal. Empey v. Rapid City, 78 S.D. 462, 103 N.W.2d 861; Tri-State Auto Auction, Inc. v. Ostroot, 76 S.D. 69, 72 N.W.2d 427. The rule applies in criminal as well as in civil actions. An appeal brings only to this court for review errors committed by the trial court which appear in the record and have been preserved and presented in the manner prescribed by applicable procedural provisions. State v. Rathjin, 46 S.D. 412, 193 N.W. 247; State ex rel. Ruffing v. Jameson, 80 S.D. 362, 123 N.W.2d 654.

Defendant moved for mistrial because of alleged prejudice arising out of the televising of a program dealing with marihuana problems by stations in Sioux Falls during the trial. No specific prejudice was shown. Defendant asserts only uncertainty concerning the fairness of the trial and this was not sufficient to justify the granting of a mistrial.

The defendant further contends that the trial court abused its discretion in imposing maximum sentences. The sentences are within the permitted statutory limits. § 19, Chap. 94, Laws 1968. The sentencing judge exercises a broad discretion in determining the kind and extent of punishment to be imposed within limits fixed by statute and sentences within such limits are not reviewable on appeal. State v. Bjelkstrom, 20 S.D. 1,

104 N.W. 481; State v. McFall, 75 S.D. 630, 71 N.W.2d 299; State v. Johnson, 81 S.D. 600, 139 N.W.2d 232.

Judgment affirmed.

All the Judges concur.